OPINION OF THE COURT
Richard N. Ross, J.
In these proceedings, the sister of the putative father of the *676 five subject children, who range in age from 7 to 14, seeks to adopt the children.
The children were placed in the custody of the New York City Commissioner of Social Services (CSS) on December 4, 1987 (see, Family Ct Act § 1055 [a]), following entry of a finding of child neglect pursuant to Family Court Act § 1012 that the children’s mother "during pregnancy used cocaine and was not in a drug rehabilitation program” and that the putative father "used crack while not being in a drug rehabilitation program at the time [the petitions] were filed” (Fam Ct, Bronx County 1987). Placement of the children was extended for one-year periods on June 30, 1989, June 21, 1990, and August 9, 1991. (See, Family Ct Act § 1055 [b] [i].) Two of the children have lived with the putative paternal aunt since 1987; the other three children joined her in 1989.
Thereafter, in proceedings filed in 1991 pursuant to Social Services Law § 384-b, the putative father admitted to having permanently neglected the five children and a finding of fact of permanent neglect was entered against him (Fam Ct, NY County, Nov. 21, 1991). (See, Social Services Law § 384-b [4] [d]; Family Ct Act § 614.) At disposition in these proceedings, the court suspended judgment against the putative father to November 20, 1992 (see, Family Ct Act §§ 631, 633), and imposed a variety of conditions on him, including, inter alia, remaining "free of the use of controlled substances,” providing a written report of weekly urine analysis, attending weekly individual counseling, having a psychiatric evaluation, and completing a parenting skills program. The plan described in the suspended judgment was for the five children to be placed in the putative father’s care on a trial basis from August 30, 1992 to November 20, 1992 if he complied with "each and every obligation” (of the suspended judgment) and that on November 20, 1992 the children would be "finally discharged” to him.
At the same time (Nov. 21, 1991), the court terminated the parental rights of the children’s mother and transferred her custody and guardianship of the five children to CSS and the children’s foster care agency.
Placement of the children with CSS in the Family Court Act article 10 proceedings expired on August 9, 1992, during the period of the suspended judgment in the Social Services Law § 384-b proceedings. The children were not thereafter discharged to the putative father. Instead, on December 10, 1992, three weeks after the children were to have been "finally *677 discharged” to him upon his fulfillment of the suspended judgment conditions, the termination of parental rights proceedings against him were "withdrawn without prejudice” and the putative father executed a judicial surrender of the five children (Fam Ct, NY County, Dec. 10, 1992). (See, Social Services Law § 383-c.) The putative father made adoption by his sister a condition of the surrenders. (See, Social Services Law § 383-c [5] [b] [iii].) The terms of the surrender instruments also provided that "[t]he parties agree that there will be liberal visitation” by the putative father with the subject children. (See, Social Services Law § 383-c [2], [5] [b] [it].)
In these subsequent adoption proceedings, filed on January 5, 1994, neither the putative aunt nor the foster care agency presented any evidence that the putative father fulfilled any of the conditions of the suspended judgment. The sole evidence regarding the putative father’s rehabilitation was the putative aunt’s vague and unsubstantiated statement at the adoption hearing that her brother had recently begun the drug addiction recovery process. Thus, seven years after the State first intervened in the family situation and began to address the family’s pathology, the putative aunt seeks approval for a return to the status quo ante. Here, a putative father decides neither to seek an order of filiation regarding his alleged children nor to provide them with financial support. He neglects the children, then fails to fulfill the terms of a suspended judgment after he is found to have permanently neglected them as well. Thus he fails to gain custody. Thereupon, with his sister’s approval, he executes surrender instruments with a view towards maintaining liberal contact with the children and potential influence over them — while continuing to have no legal obligation to provide financial support for their care. The aunt wants the five children to continue to have the putative father’s surname, which is different from her own, after the adoptions, providing convincing evidence that she continues to regard the putative father as the children’s parent despite his parental failures and his willingness to surrender parental rights. (See, Domestic Relations Law § H7 [1] [a].)
Moreover, because the putative father’s consent to the proposed adoptions is not required (see, Domestic Relations Law § 111), his "surrender” of the children was not only unnecessary to free them for adoption but had the ironic effect of improving his legal status with respect to them: By executing the surrenders, the putative father gained standing to *678 attempt to enforce the "liberal visitation” with the children that is envisioned by the surrender terms — standing which as a putative father he would not have had absent the surrenders. (See, Matter of Alexandra C., 157 Misc 2d 262 [Fam Ct, Queens County 1993].) With the assistance of a willing relative, he thus created a potential parental right by surrendering parental rights he never had.
The court does not believe that the State Legislature intended Family Court approval to be given to the effects described above when it enacted Social Services Law § 383-c. (See, Domestic Relations Law § 117 [1] [a].) The uncertain status of the law regarding the enforceability of visitation provisions contained in so-called conditional surrenders (see, Matter of Alexandra C., supra), gives no comfort here, since the aunt has evinced her intent to grant to her unrehabilitated brother continued access to the children and acknowledged at the adoption hearing that he has visited with them during the past year. Additionally, the adoption home study indicates a variety of special needs among all of the children, including treatment requirements for serious psychiatric conditions and emotional disturbances. Three of the five children, in fact, are categorized as handicapped by virtue of the severity of their particular conditions; the home study indicates ongoing functional and adjustment difficulties among all of the children. Leaving these children outside of the ambit of State supervision at this time would be unwise in these circumstances. Consideration of the children’s current needs for services, support, and protection would be more appropriate in proceedings pursuant to Family Court Act § 1055-a.
In view of the foregoing, the court denies the adoptions without prejudice to the petitioner’s re-applying upon changed circumstances. Future applications of any kind related to the adoption of any or all of the five subject children are to be filed only before this Judge.